UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

SEYED AKHAVI,

        Plaintiff,

v.                                                    CIVIL NO. 4:21cv17

THOMAS NELSON COMMUNITY COLLEGE, et al.,

        Defendants.

## MEMORANDUM DISMISSAL ORDER

This matter comes before the court on the Defendants' Motion to Dismiss the Amended Complaint ("Motion to Dismiss"), filed on May 24, 2021, ECF No. 9, and the Plaintiff's Motion For Leave to File Second Amended Complaint ("Motion to Amend"), filed on June 7, 2021, ECF No. 15. For the reasons discussed below, the Plaintiff's Motion to Amend, ECF No. 15, is **DENIED** and the Defendant's Motion to Dismiss, ECF No. 9, is **GRANTED**. The court concludes that none of the claims asserted in the Second Amended Complaint would survive a motion to dismiss. Therefore, granting leave to amend would be futile. Similarly, the court finds that the claims in the Plaintiff's Amended Complaint, ECF No. 2, do not survive the Defendant's Motion to Dismiss.

### I. Procedural Background

The Plaintiff filed the Complaint on February 2, 2021. ECF No. 1. On March 8, 2021, the Plaintiff filed an Amended

Complaint. ECF No. 2. The Amended Complaint names as Defendants Thomas Nelson Community College ("TNCC") and the Virginia Community College System ("VCCS"), and asserts claims for sex discrimination (Count One), racial discrimination (Count Two), and retaliation (Count Three), all under Title VII, 42 U.S.C. §§ 2000e to 2000e-17. Count Two also asserts racial discrimination under 42 U.S.C. §§ 1981, 1983.

On May 24, 2021, the Defendants filed the Motion to Dismiss and Memorandum in Support, asserting that TNCC is not a legal entity subject to suit under Virginia law and that the Amended Complaint fails to state a claim against VCCS under Fed. R. Civ. P. 12(b)(6). ECF Nos. 9-10. On June 7, 2021, the Plaintiff filed a response in opposition and the Motion to Amend. ECF Nos. 13-16. As an exhibit to the Motion to Amend, the Plaintiff attached the proposed Second Amended Complaint. ECF No. 16-1. The proposed Second Amended Complaint: (1) removes TNCC as a defendant; adds (2) Susan English, Lynda Byrd-Poller, and Gregory T. Decinque as defendants in their individual and official capacities; (3) adds a hostile work environment count to the claims asserted in the Amended Complaint; and (4) contains additional factual assertions regarding the Plaintiff's claims for discrimination and retaliation. Id. On June 21, 2021, the Defendants filed a response in opposition to the Motion to Amend, arguing that the proposed

amendments would be futile. ECF No. 18. The Plaintiff filed a reply on June 28, 2021. ECF No. 20.

## II. Motion to Amend

### A. Legal Principles

A plaintiff may amend the complaint once as a matter of right, subject to certain time limitations. See Fed. R. Civ. P. 15(a)(1). Otherwise, any amendment requires "the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." Id. "[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Laber v. Harvey, 438 F.3d 404, 427 (4th Cir. 2006) (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)). Amendment is futile if the claims asserted in an amended pleading "could not withstand a motion to dismiss." Perkins v. United States, 55 F.3d 910, 917 (4th Cir. 1995).

A complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility means that

3

a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The court does not, however, accept as true conclusory statements that are not supported by factual allegations. See id.

### B. Factual Background

For purposes of determining whether amendment would be futile, the court accepts as true the following facts alleged in the Second Amended Complaint and views these facts in the light most favorable to the Plaintiff. Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005).

TNCC is a community college in the Commonwealth of Virginia. Second Am. Compl., ¶ 15. VCCS is a corporation that "establishes, controls, and administers" community colleges in Virginia, including TNCC. Id. English is the Vice President of Academic Affairs and Workplace Development at TNCC. Id. ¶ 16. Byrd-Poller is TNCC's Director of Human Resources. Id. ¶ 17. DeCinque was, at the relevant time periods, Interim President of TNCC. Id. ¶ 18. On July 18, 2016, TNCC hired the Plaintiff as Dean of the Science, Engineering, and Technology ("STEM") department. Id. ¶ 23.

On or about October 19, 2018, Elena Kuchina, a professor at TNCC, accused the Plaintiff of gender discrimination, retaliation, and creating a hostile work environment. Id. ¶ 28. English investigated Kuchina's claims and determined that there was

4

sufficient evidence to support a finding of retaliation by the Plaintiff against Kuchina. Id. ¶¶ 34-35. On July 25, 2019, English issued the Plaintiff a letter of reprimand. Id. ¶ 35.

On July 10, 2019, and July 17, 2021, respectively, two more TNCC employees, Rhonda Scott and Cherie Aukland, filed human resources complaints against the Plaintiff. Id. ¶¶ 40-41. Scott accused the Plaintiff of "workplace harassment" and "workplace misconduct," while Aukland accused the Plaintiff of "intimidation and demeaning behavior." Id. The Plaintiff was placed on paid suspension beginning on July 18, 2019, while English investigated these complaints. Id. ¶ 43. English substantiated Scott and Aukland's claims, and, because of the investigation, the Plaintiff was suspended without pay for twenty-one (21) days beginning on August 29, 2019. Id. ¶ 46; see id., Exh. J. The same day, English placed the Plaintiff on a performance improvement plan, which was designed to improve the Plaintiff's "interpersonal skills, conflict resolution, and communication." Second Am. Compl., ¶¶ 52, 61.

On January 15, 2020, English notified the Plaintiff that she would recommend to the President of TNCC that the Plaintiff not be reappointed to his position as Dean of the STEM department because of unsatisfactory job performance.[1] Id. ¶ 68. On January 23, 2020,

---

[1] TNCC appoints its Deans for one (1) year contracts, and a Dean will be reappointed for successive contracts except for "just

the Plaintiff wrote English a response stating his disagreement with English's decision and requesting that she reconsider. Id. ¶ 69. On February 7, 2020, English wrote back, stating that she intended to uphold her original decision. Id. ¶ 70; see ECF No. 20-1. Also on February 7, 2020, English wrote to the Plaintiff indicating that he was not successful in completing the performance improvement plan because of lack of improvement in all three areas: interpersonal skills, conflict resolution, and communication. Second Am. Compl., ¶ 64; see ECF No. 10-2.[2] On March 9, 2020, the Plaintiff filed a grievance concerning his suspensions and non-reappointment.[3] Second Am. Compl., ¶ 71; see id., Exh. A. The grievance asserted that English's decisions were based on "unsubstantiated investigations, evaluations, and other examinations," a lack of "due process rights to properly address"

---

cause." Second Am. Compl., ¶ 67.

[2] Although the letter from English to the Plaintiff describing the results of the performance improvement plan was submitted by the Defendants and not attached to the Second Amended Complaint, the court concludes that this document can properly be considered at this juncture because English's letter is expressly referenced in the Second Amended Complaint and because the Plaintiff does not dispute its authenticity. See Glenn v. Wells Fargo Bank, N.A., 710 F. App'x 574, 576 (4th Cir. 2017).

[3] At a time not specified in the Second Amended Complaint, the Plaintiff asked Byrd-Poller about his grievance, and Byrd-Poller told him that he could select a TNCC "cabinet member" to review the grievance. Second Am. Compl., ¶ 75. Later, however, Byrd-Poller "admit[ted] she was mistaken, and the hearing had to funnel through . . . English." Id.

the complaints made against him, "personal vendettas," and "gender and race-based discrimination." Second Am. Compl., ¶ 71.

In April 2020, TNCC assembled a "Faculty Ad Hoc Grievance Committee" ("Committee") to consider the Plaintiff's grievance related to his suspensions and non-reappointment and to recommend disposition of the grievance to DeCinque. Id. ¶ 79. On June 11, 2020, the Committee released a report recommending findings that "the suspensions were overly harsh, unmerited and unsupported by policy" and that "therefore, the non-reappointment was unjustified." Id. ¶ 81. In a letter dated June 26, 2020, DeCinque informed the Plaintiff that he did not agree with the Committee's recommendations because the Committee had "exceeded the scope of its purpose." Id. ¶ 82. DeCinque further stated that he agreed with English's recommendation and would not reappoint the Plaintiff as Dean. Id. On July 13, 2020, the Plaintiff petitioned the Vice Chancellor of VCCS to review his grievance. Id. ¶ 10. The Vice Chancellor upheld DeCinque's decision on August 7, 2020. Id.

On August 19, 2020, the Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination and retaliation on the basis of sex, race, and national origin. Id. ¶ 19, see id., Exh. F. The EEOC dismissed the Plaintiff's Charge and issued a right to sue letter on November 5, 2020. Id. ¶¶ 20-21; see id., Exhs. G, H.

## C. Analysis

The proposed Second Amended Complaint states four causes of action against VCCS, English, Byrd-Poller, and DeCinque: (1) hostile work environment, in violation of Title VII; (2) sex discrimination, in violation of Title VII; (3) racial discrimination, in violation of Title VII and 42 U.S.C. §§ 1981, 1983; and (4) retaliation, in violation of Title VII. See ECF No. 16-1. The Plaintiff names English, Byrd-Poller, and DeCinque as defendants in their individual and official capacities. Id. The Defendants request that the court deny leave to file the Second Amended Complaint on the ground that the claims therein could not survive a motion to dismiss and, therefore, that amendment would be futile.[4] ECF No. 18.

### 1. Hostile Work Environment (Count One)

In Count One of the Second Amended Complaint, the Plaintiff asserts that VCCS subjected him to a hostile work environment when English investigated complaints made against him, reprimanded him, suspended him, and recommended that he not be reappointed as Dean

---

[4] The Plaintiff's proposed Title VII claims would clearly be futile as to English, Byrd-Poller, and DeCinque in their individual capacities because Title VII does not provide for individual liability. See Lissau v. S. Food Serv., Inc., 159 F.3d 177, 180-81 (4th Cir. 1998). Moreover, any Title VII claim against these defendants in their official capacities would be duplicative of the Title VII claims brought against VCCS. See Johnson v. North Carolina, 905 F. Supp. 2d 712, 721 (W.D.N.C. 2012). Accordingly, the court proceeds as if the Plaintiff's proposed Title VII claims name only VCCS as a defendant.

of the STEM department. Second Am. Compl., ¶¶ 88–93. The Plaintiff describes the complaints against him as "unwarranted" and English's investigation as "incomplete, unsubstantiated, [and] biased." Id. ¶ 90. The Plaintiff also asserts that he was treated unfairly in numerous other ways: (1) English and Byrd-Poller's failures to provide updates about the investigation or to respond to his inquiries in a timely manner, id. ¶¶ 34, 49, 53, 66, 75; (2) VCCS's alleged failure to follow their own policies for workplace grievances, id. ¶ 75; (3) that the Plaintiff was reassigned to a position not commensurate with his education, experience, and performance after being removed from his position as Dean, id. ¶¶ 77–78; and (4) that the performance review plan was based on an "extremely subjective standard" that was "unreasonable" and put the Plaintiff in "an impossible situation," id. ¶¶ 62, 72, 81.f.

To state a hostile work environment claim, the Plaintiff must plausibly allege that (1) he experienced unwelcome conduct that was (2) based on his protected characteristic, (3) sufficiently severe or pervasive to alter the conditions of his employment, and (4) attributable to the employer. See Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 221 (4th Cir. 2016). "[O]nly harassment that occurs because of the victim's [protected trait] is actionable." Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 772 (4th Cir. 1997).

The plaintiff in <u>Miller v. Gruenberg</u>, No. 1:16cv856, 2017 WL 1227935, at *3, *12-13 (E.D. Va. March 31, 2017) (O'Grady, J.), made a hostile work environment claim similar to the Plaintiff's in this case. In <u>Miller</u>, the plaintiff alleged that his employer created a hostile work environment when it investigated reports that the plaintiff had engaged in sexual harassment and reprimanded him after substantiating those reports. <u>Id.</u> Judge O'Grady explained:

> Plaintiff's charge that he was subjected to a hostile work environment by the accusations made against him in the sexual harassment investigation is a perversion of the hostile work environment standard. Defendant investigated reports that Plaintiff had placed <u>other</u> employees in unwelcome situations because of sex. The fact that Defendant thoroughly investigated those claims and brought them to Plaintiff's attention, while protecting the identities of the accusers, does not afford Plaintiff a claim for a hostile work environment.

<u>Id.</u>, <u>aff'd</u> 699 F. App'x 204 (4th Cir. 2017). The instant case is not materially distinguishable from <u>Miller</u>, and the court therefore finds that the Plaintiff cannot assert a hostile work environment claim based on allegations that other employees made workplace complaints <u>against him</u> and that his employer investigated those complaints.

Furthermore, although the Plaintiff has repeatedly accused English and VCCS of conducting an inadequate and biased investigation into the complaints made against him, the Plaintiff has not stated allegations sufficient to give rise to a reasonable

inference of bias or discrimination. Rather than assert facts that could demonstrate discrimination based on race or sex, the Plaintiff merely states that "[u]pon information and belief, Defendants' unwelcome conduct is based on Plaintiff's gender and race." Second Am. Compl., ¶ 91. This conclusory allegation is not entitled to "the presumption of truth." Iqbal, 556 U.S. at 681. Furthermore, the remaining allegations in the Second Amended Complaint do not support a reasonable inference of discrimination. See infra Sections II.C.2-3. Although the Plaintiff has identified a litany of actions taken by VCCS and other employees that he found offensive and unjustified, he has not plausibly alleged that VCCS or others took any of these actions because of his sex or race, and therefore his hostile work environment claim is not actionable under Title VII. See Hartsell, 123 F.3d at 772. The court therefore **DENIES** leave to amend as to Count One of the Second Amended Complaint.

### 2. Sex Discrimination (Count Two)

In Count Two of the Second Amended Complaint, the Plaintiff alleges that VCCS violated Title VII by discriminating against him because of his sex. Second Am. Compl., ¶¶ 94-106. The Plaintiff asserts that he was discriminated against when he was suspended twice and when he was not reappointed to his position as Dean of the STEM department. Id. The Defendants respond that the Second Amended Complaint fails to state a claim because (1) the

Plaintiff's discrimination charge with the EEOC was not timely filed with respect to the suspensions, and (2) the Plaintiff has failed to plausibly allege that his non-reappointment was based on his sex. ECF No. 18 at 12-16.

### a. Timeliness of EEOC Charge

To raise a claim under Title VII, a plaintiff must file a timely charge with the EEOC. See 42 U.S.C. § 2000e-5(e)(1). The parties agree that the Plaintiff was required to file his EEOC Charge within three hundred (300) days after the allegedly discriminatory acts for which he seeks relief. Any discriminatory action that occurred outside that limitations period "cannot be used as a basis for recovery." Gilliam v. S.C. Dep't of Juv. Just., 474 F.3d 134, 139 (4th Cir. 2007).

The Plaintiff filed his EEOC Charge on August 19, 2020. Second Am. Compl., ¶ 19. The Plaintiff's suspensions occurred on July 18, 2019, and on August 29, 2019, and the non-reappointment occurred, at the earliest, on June 26, 2020. Id. ¶¶ 7, 43, 46. The Defendants argue that the Plaintiff's EEOC Charge was filed more than three hundred (300) days after his July 18, 2019, and August 29, 2019, suspensions, and therefore that the court should dismiss the Plaintiff's sex discrimination claim as to the suspensions. ECF No. 18 at 12-14. Because "an employment discrimination cause of action accrues on the date that the alleged unlawful employment practice occurs," Martin v. Sw. Va. Gas Co., 135 F.3d 307, 310

12

(4th Cir. 1998), and "[a]ny discrete acts of discrimination that occurred prior to the applicable limitations period are procedurally barred," Gilliam, 474 F.3d at 139, the court agrees that the EEOC Charge was untimely as to the suspensions, which both occurred well more than three hundred (300) days before the date the Plaintiff's Charge was filed.[5]

The Plaintiff resists this conclusion by citing the continuing violation doctrine. ECF No. 14 at 5-7. Under this doctrine, "a hostile work environment claim may appropriately extend to acts that occurred before the relevant limitations period if the hostile work environment continued within the limitations period as well." Gilliam, 474 F.3d at 140 (alterations omitted) (quotation marks omitted). Here, however, the Plaintiff has not asserted a viable hostile work environment claim. See supra Section II.C.1. Because the suspensions are discrete acts of alleged discrimination, rather than actions that form part of a larger hostile work environment claim, the Plaintiff is time-barred from recovering for the allegedly discriminatory suspensions.[6]

---

[5] Furthermore, the Plaintiff does not argue that the court should waive or equitably toll the deadline, and the facts alleged in the Second Amended Complaint do not support application of those doctrines in any event. See Zipes v. Trans World Airline, Inc., 455 U.S. 385, 393 (1982).

[6] Alternatively, the court would find that the Plaintiff has failed to plausibly allege that the suspensions were based on unlawful discrimination for the reasons stated infra Section II.C.2.b.

White v. BFI Waste Servs., LLC, 375 F.3d 288, 292-93 (4th Cir. 2004); see Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002).

### b. Non-Reappointment

Given that the EEOC Charge was untimely as to the suspensions, the Plaintiff is limited to asserting a discrimination claim based on the decision not to reappoint him as Dean of the STEM department. To survive a motion to dismiss, the Plaintiff must state facts that, if true, would be sufficient to show that VCCS "discriminate[d] against him with respect to his compensation, terms, conditions, or privileges of employment, because of his . . . sex." 42 U.S.C. § 2000e-2(a)(1) (emphasis added); see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015).

In Count Two of the Second Amended Complaint, the Plaintiff asserts that he has a protected trait (male) and that he was subject to an adverse employment action: the decision not to reappoint him as Dean. Second Am. Compl., ¶ 99. The question is whether the Plaintiff has plausibly alleged that VCCS took this action because he is a male. The court concludes that the Plaintiff has not met this burden. To demonstrate that he was the subject of discrimination, the Plaintiff asserts that (1) English and the individuals who made complaints about him are female; (2) English was "responsible for removing" other male employees; and (3) there

14

are several "comparators" -- individuals who were similarly situated to the Plaintiff but treated differently. Second Am. Compl., ¶¶ 83-87, 100, 103-04.

That English and the complainants are female and that English was allegedly involved in removing other male employees are, at most, "consistent with discrimination," but do not "support a reasonable inference that the decisionmakers were motivated by bias."[7] McCleary-Evans, 780 F.3d at 586; see Twombly, 550 U.S. at 557. Furthermore, the Plaintiff's comparators do not suffice to permit a reasonable inference of discrimination. If a plaintiff relies on comparators in a discrimination case, "the given comparators must be similar in all relevant respects." Emami v. Bolden, 241 F. Supp. 3d 673, 680 (E.D. Va. 2017) (Smith, J.) (quoting Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010)); see Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 191 (4th Cir.

---

[7] The Second Amended Complaint is particularly lacking with respect to the Plaintiff's conclusory allegation that English was somehow involved in removing other male employees from their positions. The Plaintiff alleges that English encouraged a male employee to apply for a position that was later eliminated. But the Second Amended Complaint does not state that English had anything to do with eliminating that position after the employee was hired. Additionally, the Plaintiff merely alleges that two (2) male employees were "RIFed" or terminated pursuant to a reduction-in-force (RIF), Second Am. Compl., ¶ 103, with no information about whether or how English was involved, see id. ¶¶ 27, 103. Furthermore, although the Second Amended Complaint alleges in conclusory fashion that English was responsible for removing certain male employees from their positions, it does not state that, on the whole, English treated women more favorably than men in this regard.

2010). The comparators identified in the Second Amended Complaint, however, are not similar to the Plaintiff in relevant respects, and in fact they all possess obvious and material differences from the Plaintiff. Unlike the Plaintiff, none of the comparators had been accused of and investigated for harassment or retaliation; none had been suspended after violating workplace policy; none had been placed on a performance improvement plan; and none had been unsuccessful in meeting the objectives of a performance improvement plan. Even viewing the facts in the light most favorable to the Plaintiff, the comparators are simply too different from the Plaintiff to serve as meaningful benchmarks for the Plaintiff's discrimination claim. See, e.g., Coleman, 626 F.3d at 191.

The Plaintiff argues that "determinations regarding whether . . . comparators' features are sufficiently similar to constitute appropriate comparisons generally should not be made at the pleading stage." ECF No. 14 at 8 (quoting Woods v. City of Greensboro, 855 F.3d 639, 650 (4th Cir. 2017)). While the court agrees with this principle in general, the Fourth Circuit has indicated that, in appropriate cases, courts can determine this issue on a motion to dismiss. See Coleman, 626 F.3d at 191; see also Woods, 855 F.3d at 651 (stating that a Title VII discrimination complaint could not be dismissed for failure to state a claim where the complaint contained "sufficient facts to

justify an inference, <u>plausibly and reasonably indulged</u>, that the [defendant] treated [the plaintiff] differently from the way it has treated [others] <u>under arguably similar circumstances</u>" (emphases added)).[8]

Viewed in the light most favorable to the Plaintiff, the Second Amended Complaint supports -- at most -- the conclusion that the Plaintiff should not have been punished as severely as he

---

[8] The Plaintiff asks the court to infer that his non-reappointment was entirely unrelated to the complaints against him, the suspensions, or the Plaintiff's failure to complete the performance improvement plan, because English did not specifically mention these in her January 15, 2020, letter. ECF No. 14 at 10. Therefore, the Plaintiff continues, the fact that he differs from the comparators in those respects is immaterial. <u>Id.</u> Although the court must view the facts in the light most favorable to the Plaintiff at this juncture, he is only entitled to have <u>reasonable</u> inferences drawn in his favor, <u>see</u> <u>McCleary-Evans</u>, 780 F.3d at 585, and the inference he requests is simply not reasonable in light of the factual allegations in the Second Amended Complaint and "the 'obvious alternative explanation'" that English and DeCinque relied on the totality of the information before them in making their respective decisions regarding the Plaintiff's non-reappointment. <u>Id.</u> This much is clear from the fact that on February 7, 2020, English responded to the Plaintiff's request that she reconsider her non-reappointment recommendation by (1) detailing the Plaintiff's lack of success in completing the performance improvement plan, and (2) stating that she intended to uphold her recommendation. <u>See</u> ECF Nos. 10-2, 20-1. Other facts in the Second Amended Complaint also plainly undermine the Plaintiff's argument that his prior conduct played no role in the decision to remove him as Dean. <u>See, e.g.</u>, Second Am. Compl., ¶¶ 51 (indicating that faculty were told as early as the time of the Plaintiff's first suspension that he would not return to TNCC in a supervisory role), 72 (stating that the Plaintiff was "unable to engage in any activities on behalf of the College while suspended," and that such interruptions caused his "failure to meet critical deadlines"), 81 (stating that the Committee found that the non-reappointment was unjustified <u>in light of its finding that the suspensions were unwarranted</u>).

was, or perhaps that he should not have been punished at all. But this is not enough to sustain a discrimination claim because unfair treatment in the workplace is actionable under Title VII only if such treatment occurs <u>because of an employee's protected characteristic</u>. See, e.g., <u>Hartsell</u>, 123 F.3d at 772. As explained above, the Plaintiff simply has not alleged sufficient non-conclusory allegations to support a plausible inference of sex discrimination in his non-reappointment. Accordingly, the court finds that Count Two of the Second Amended Complaint fails to state a claim and, therefore, that amendment would be futile. The court **DENIES** leave to amend as to Count Two.

### 3. Racial Discrimination (Count Three)

In Count Three of the Second Amended Complaint, the Plaintiff asserts that VCCS violated Title VII and that VCCS, English, Byrd-Poller, and DeCinque violated 42 U.S.C. §§ 1981, 1983, by discriminating against him because of his race.[9] Second Am. Compl., ¶¶ 107-118.

---

[9] The Plaintiff's proposed § 1983 claim would be futile as to VCCS and as to English, Byrd-Poller, and DeCinque in their official capacities because "neither a state nor its officials acting in their official capacities are 'persons' under § 1983." <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989). Therefore, any § 1983 claim against VCCS or against English, Byrd-Poller, and DeCinque in their official capacities would be barred by sovereign immunity, see <u>id.</u>, and such amendment would be futile, see <u>Perkins</u>, 55 F.3d at 917.

The court evaluates the Plaintiff's Title VII racial discrimination claim pursuant to the same standard that the court applied to the Plaintiff's Title VII sex discrimination claim. See supra Section II.C.2.b. To state a plausible claim under 42 U.S.C. § 1983, the Plaintiff must "plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." Sheppard v. Visitors of Va. State Univ., 993 F.3d 230, 238 (4th Cir. 2021). To state a claim under § 1981, a plaintiff must plead facts that, if true, would show that the defendant "intended to discriminate [against the Plaintiff] on the basis of his race, and that the discrimination interfered with a contractual interest." Denny v. Elizabeth Arden Salons, Inc., 456 F.3d 427, 434 (4th Cir. 2006).

### a. VCCS

The Second Amended Complaint does not plausibly allege that VCCS discriminated against the Plaintiff because of his race, whether analyzed under Title VII or 42 U.S.C. §§ 1981, 1983. As evidence that he was the victim of racial discrimination, the Plaintiff relies on comparators who he says were similarly situated to him but treated more favorably. As discussed supra Section II.C.2.b, at 15-17 & n.8, however, the allegations in the Second Amended Complaint make clear that those individuals are different from the Plaintiff in relevant ways such that they are not useful

comparators in this case. Because the Second Amended Complaint contains no other factual content that could support a reasonable inference that the non-reappointment decision was based on racial discrimination, the court **DENIES** leave to amend as to VCCS.

### b. English

The Second Amended Complaint does not plausibly allege that English is liable for racial discrimination under 42 U.S.C. §§ 1981, 1983. The Plaintiff asserts that English discriminated against him during her investigation of the complaints made against him, and that her decisions to suspend the Plaintiff and to recommend his non-reappointment were based on his race. For the reasons stated <u>supra</u> Section II.C.3.a, the Plaintiff has not plausibly alleged that any of these actions were based on racial discrimination. Therefore, the Second Amended Complaint fails to state a claim under 42 U.S.C. §§ 1981, 1983 against English, and the court **DENIES** leave to amend to name English as a defendant.

### c. Byrd-Poller

The Plaintiff fails to allege facts sufficient to state a claim against Byrd-Poller. The Second Amended Complaint simply states that Byrd-Poller is TNCC's Director of Human Resources; that she told the Plaintiff he could select a cabinet member to review his grievance; that she later corrected this statement and told the Plaintiff that he could not select the individual who reviewed his grievance; that she did not respond to an email from

the Plaintiff's counsel in a timely manner; and that she "convened and trained" the Committee that reviewed the Plaintiff's grievance. Second Am. Compl., ¶¶ 6, 17, 75. None of these facts remotely suggest that Byrd-Poller engaged in unlawful discrimination against the Plaintiff. The court therefore **DENIES** leave to amend to add Byrd-Poller as a defendant in her individual capacity.

### d. DeCinque

Lastly, the Second Amended Complaint fails to state a §§ 1981 or 1983 claim against DeCinque in his individual capacity. The Second Amended Complaint merely alleges that DeCinque "overturned the Committee's decision . . . based on his . . . conclusion that the Committee exceeded the scope of the purpose for which it was established." Second Am. Compl., ¶ 71; see id. ¶ 82. And the Plaintiff asserts that DeCinque's liability "lies in his perpetuating a 'corporate culture' of upholding faulty, baseless employment decisions." ECF No. 20 at 3. However, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Iqbal, 556 U.S. at 676. Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. (emphasis added). Because the Plaintiff does not allege that DeCinque personally discriminated against him, the Second Amended Complaint

21

fails to plausibly allege a claim against DeCinque under §§ 1981, 1983. See id.; see also Hawthorne v. Va. State Univ., 568 F. App'x 203, 204-05 (4th Cir. 2014). The court **DENIES** leave to amend to add DeCinque as a defendant.

For the foregoing reasons, the Second Amended Complaint fails to state a claim of racial discrimination under Title VII against VCCS or under 42 U.S.C. §§ 1981, 1983 against VCCS, Byrd-Poller, DeCinque, or English. Accordingly, amendment would be futile, and the court **DENIES** leave to amend as to Count Three of the Second Amended Complaint.

#### 4. Retaliation (Count Four)

In Count Four of the Second Amended Complaint, the Plaintiff asserts that VCCS retaliated against him for engaging in activity that is protected under Title VII. Second Am. Compl., ¶¶ 119-29. To state a claim for retaliation, the Plaintiff must allege that (1) he engaged in protected activity; (2) an adverse employment action was taken against him; and (3) there was a causal connection between the protected activity and the adverse employment action. See Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir. 2007). The Defendants concede that the Plaintiff's grievances were protected activity and that the non-reappointment was an adverse employment action. Therefore, only the last element of a retaliation claim is at issue.

The Plaintiff alleges that DeCinque upheld the suspensions and decided to not reappoint him to his position as Dean in retaliation for the Plaintiff having filed grievances challenging his suspensions and English's decision to recommend non-reappointment. ECF No. 14 at 11.

The court concludes that this is not a legitimate retaliation claim. The Plaintiff admits that he sought DeCinque's review of the suspensions and of English's non-reappointment recommendation, and he now asserts that DeCinque retaliated against him by upholding the very decisions of which he sought DeCinque's review. To allow this claim to move forward would put DeCinque and VCCS in a quintessential "no win" situation: either sustain the Plaintiff's grievances -- no matter their merit -- or be subject to potential Title VII liability for "retaliating" against the Plaintiff (i.e., denying the grievances) because of the Plaintiff's protected activity (i.e., filing the grievance).

Of course, DeCinque would not have been called upon to consider the Plaintiff's grievances if the Plaintiff had not filed them. However, the court concludes that this is not sufficient to establish the causation element of a Title VII retaliation claim. As explained _supra_ Section II.C.3.d, the Second Amended Complaint does not plausibly allege that DeCinque had any discriminatory motive for his actions. Nor is there anything in the Second Amended Complaint to plausibly suggest that DeCinque denied the grievances

23

because he wanted to punish the Plaintiff for filing those same grievances. Accordingly, even viewing the facts in the light most favorable to the Plaintiff, DeCinque's actions were not "retaliatory" in any meaningful sense of the word, and the court **DENIES** leave to amend as to Count Four of the Second Amended Complaint.

### D. Conclusion

Based on the foregoing, the court concludes that all the claims asserted in the Second Amended Complaint would not survive a motion to dismiss. Therefore, granting leave to amend would be futile, see Perkins, 55 F.3d at 917, and the Motion to Amend, ECF No. 15, is **DENIED**.

### III. Motion to Dismiss

In the Motion to Dismiss, the Defendants request that the court dismiss the Amended Complaint in its entirety. ECF Nos. 9-10. The Amended Complaint states three claims against VCCS and TNCC: sex discrimination, in violation of Title VII (Count One); race discrimination, in violation of Title VII and 42 U.S.C. §§ 1981 and 1983 (Count Two); and retaliation, in violation of Title VII (Count Three). Since filing the Amended Complaint, the Plaintiff has acknowledged that TNCC is not a proper defendant because it is not a legal entity subject to suit under Virginia law. ECF No. 14 at 5-6. Furthermore, as to VCCS, the claims in the Amended Complaint are nearly identical to Counts Two, Three, and Four of

the Second Amended Complaint.[10] Compare ECF No. 2 (Amended Complaint), with ECF No. 16-1 (Second Amended Complaint). Accordingly, for the reasons stated supra Sections II.C.2-4, the Motion to Dismiss, ECF No. 9, is **GRANTED**.

### IV. Conclusion

The Plaintiff's Motion to Amend, ECF No. 15, is **DENIED**. The Defendant's Motion to Dismiss, ECF No. 9, is **GRANTED**. The Defendant's request for a hearing, ECF No. 19, is **DENIED**, as none is required for disposition of this matter. The Clerk is **DIRECTED** to forward a copy of this Memorandum Dismissal Order to counsel for the parties.

**IT IS SO ORDERED.**

/s/

Rebecca Beach Smith
Senior United States District Judge

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

December 16, 2021

---

[10] As to the Plaintiff's discrimination and retaliation claims, the Second Amended Complaint contains some additional allegations that are missing from the Amended Complaint.